# Buckner S. Morris, Administrator, *et al.*

## *v.*

## Ralph Cheney.

1. Equitable assignee—*how far protected.* Courts of law will recognize and protect the rights of the assignee of a *chose in action,* whether the assignment be good at law, or in equity only. In equity, all contracts and agreements may be assigned, and the interest of the assignee will constitute a defense to a proceeding by garnishment.

2. So where a railroad company, having a claim for unpaid subscription to the stock of the company, transfers the same by.its authorized agent, the purchaser will be protected in equity, and his right to the proceeds of the claim will not be affected by the fact that there may not have been a formal written assignment thereof.

3. Railroad corporation—*of its power to dispose of its choses in action.* A railroad company having a claim for an unpaid subscription to its stock, has the power to sell it, or make a contract to dispose of it, for the purposes of the road, as much as to assign a promissory note. Such a corporation has the power to contract for the sale of any of its securities, *choses in action,* or assets, for the purpose of raising means to construct or equip its road, or to pay its indebtedness.

4. But the power to sell such securities does not include the power to mortgage them. So the act of the legislature of Wisconsin in relation to the execution of mortgages by railroad companies, does not authorize such companies in that State to mortgage their stock subscriptions as security for the payment of their bonds.

Appeal from the Superior Court of Chicago; the Hon. John A. Jameson, Judge, presiding.

This was a suit in chancery commenced in the court below by Ralph Cheney against Buckner S. Morris, administrator, and Emily M. Norton, administratrix, of the estate of Lewis W. Clark, deceased, and Azel Dorathy, to determine the right, as between the complainant, Cheney, and the defendant Dorathy, to a claim against the estate of Clark.

The character of the claim, and of the respective rights of the parties thereto, is sufficiently set forth in the opinion of the court.

The court below found the better right in the claim to be in the complainant, Cheney, and decreed accordingly. From that decree the administrators of Clark, and Dorathy, took this appeal.

Mr. B. S. Morris, for the administrators, and Mr. R. H. Forrester, for the appellant Dorathy.

Mr. W. T. Burgess, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

The question presented by this record is, which party has the prior right to this claim on the estate of Lewis W. Clark, deceased, the appellee, Cheney, or the appellant Dorathy? We lay aside all consideration of the questions raised by the administrators of Clark, since, if Dorathy's claim be established, the administrators of that estate are accountable to him, and not to Cheney, the appellee. That Dorathy's claim is prior in

time to that of appellee we can not doubt, as these facts will show. Clark's indebtedness arose out of his subscription to stock in the Wisconsin Central Railroad Company to the extent of $1,000, on which he had paid $100 in his lifetime.

Frederick J. Starnes was the chief engineer of the company, and in the month of February, 1858, the board of directors of the company instructed and authorized him to collect, dispose of, and make all he could out of this claim against Clark's estate, and other claims for unpaid subscriptions of stock, against persons in Chicago, the residence of Clark, in his lifetime, and apply the proceeds to the expenses of the engineering and operating departments of the road then being constructed, and to other indebtedness of the company.

In December, 1858, Starnes sold and transferred this claim to Dorathy for $635, or thereabouts, to be paid in installments. Several installments were paid by Dorathy, which, in 1859— early in that year—amounted to $365, and in 1866 he made another payment of $100, leaving due about $170.

Starnes, at the close of 1858, reported to the company this sale to Dorathy, which was approved by the president and secretary, and by the executive committee thereof. He, as agent of the company, at the time of the sale, executed to Dorathy a written assignment of the claim, authorizing him to collect it for his own use, which was attested by the seal of the company.

On the 4th of February, 1859, Starnes having advanced money to the company to pay expenses connected with the engineering and construction of the road, and to discharge other indebtedness of the company to him, the company executed to him a written assignment of this claim, with other claims ; and he testifies that all the moneys he received from Dorathy for this claim, and for other assets assigned to him, were applied to the payment of the expenses of the company in the engineering and operating departments of the road. Starnes, however, makes no claim as against Dorathy, nor does

he charge him with being in default in the non-payment of the balance of the purchase money, but considers the contract as in force, as between them. Nor is there any dispute that these were fair transactions, made in good faith, and for an honest purpose.

That equity will sustain such a sale and assignment as Starnes made with Dorathy is not a question open to discussion. The doctrine is well settled, that courts of law will recognize and protect the rights of the assignee of a chose in action, whether the assignment be good at law or in equity only. *Chapman* v. *Shattuck*, 3 Gilm. 49. And in *Carr* v. *Waugh*, 28 Ill. 418, this court said, that, in equity, all contracts and agreements may be assigned, and will be protected, and the interest of the assignee will constitute a defense to a proceeding in garnishment. The claim being one belonging to the company, it was within the legitimate scope of their powers to sell it, or make a contract to dispose of it, for the purposes of the road, as much so as to assign a promissory note. *Frye* v. *Tucker*, 24 Ill. 181; *Goodrich* v. *Reynolds et al.*, 31 ib. 490.

We will now consider the position of the appellee in regard to this claim. He has a demand against this railroad company, in the shape of coupon bonds issued by it.

On the 5th of February, 1857, a mortgage was executed by this company to Yelverton and De Angelis, to secure bonds payable to bearer, and it is contended, by this mortgage, this claim on Clark's estate was assigned to them, and as it was prior in time to Dorathy's purchase, they have the prior equity—that it was assigned in trust for the bondholders, of whom appellee was one. His counsel also say, that the assignment was never, in fact, delivered to Dorathy, nor the whole consideration ever paid by him. Starnes is the only witness who testifies to the facts respecting the sale of this claim to Dorathy, and he says he made the sale to him, which was ratified by the proper officers of the company. The original agreement with Dorathy, he says, was left with Mr. Goodwin, an attorney, in Chicago, awaiting the payments to be made by

Dorathy, and he does not think it was ever returned to him. Even if there was no formal written assignment of this claim, enough is shown to prove a sale of it by a person authorized to make it, and it has not been repudiated by the parties interested. It is true, a debt or chose in action is not generally assignable at law, except in case of negotiable instruments, and, for that reason, the assignee is ordinarily compelled to seek redress against the assignor and the debtor solely in courts of equity. 2 Story's Eq. Jur. sec. 962. If A, having a debt due to him from B, should order it to be paid to C, the order would amount, in equity, to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. A trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it, (ib. sec. 1,044), and an assignment of a debt may be by parol as well as by deed. Ib. 1,047.

The power of such a corporation to contract for the sale of any of its securities, choses in action, or assets, for the purpose of raising means to construct or equip its road, or to pay its indebtedness, is not denied. Stock subscriptions are the means primarily resorted to for such purpose, and in the fact that they are not always promptly paid may be found one reason why they are so often in default.

It is, no doubt, true, that such an assignee, in order to perfect his title against the debtor, must give immediate and prompt notice of the assignment to him; still, if he does not give such notice, it does not destroy his right, but exposes it to be overreached by a subsequent assignment to another.

Has any prior right been acquired by the appellee, under the Yelverton and De Angelis mortgage? That was executed on the 5th of February, 1857, and for the purpose, as recited in it, of providing funds to complete the road—the very purpose to which the money received from Dorathy on the sale of this claim was appropriated. What is mortgaged? It was determined bonds should be issued upon the entire line of the company's road, without priority among the several bonds, and

that the bond should have a certain form, commencing with the statement, "First mortgage bonds, secured on all the estate and property of the Wisconsin Central Railroad Company," &c., "and the holder thereof is entitled to the security derived from a mortgage bearing date February 5, 1857, and duly recorded, on all the property and estate whatsoever, real and personal, now owned or which may hereafter be acquired by said Wisconsin R. R. Co., with all the rights, privileges, franchises and appurtenances thereunto belonging," and, after mortgaging all their railroad property and franchises, it is provided, that nothing contained in the mortgage shall be so construed as to prevent the company from selling or otherwise disposing of any city or county bonds or mortgages, stocks or other securities, received in payment or security for stock, or otherwise, provided that the proceeds of the sale, lease, or other disposition of such lands and property, shall be faithfully applied to the payment of the debts of the company, or be used in the construction and equipment of said company's road.

The act of the legislature of Wisconsin, in evidence by agreement, in relation to the execution of mortgages by railroad companies, so far as the point now under consideration is involved, provides, in sec. 1, as follows: "Such company may make such provisions in such trust deed or mortgage for pledging or transferring their railroad track, right of way, depot grounds, rights, privileges, franchises, immunities, machinery, machine houses, rolling stock, furniture, tools, implements, appendages and appurtenances, belonging to or in connection with said railroad or railroads, in any manner whatsoever, as security for any bonds, debts, or sums of money that may be secured by such trust deed or mortgage, as they shall think proper," &c.

It will be perceived here is no power given to the company to sell or assign its cash assets—to mortgage the very means indispensable to the construction and equipment of the road, and thus make it a security for the payment of the bonds.

None of the expressions used in this act can be so construed as to embrace stock subscriptions, nor, from the nature of the subject, could it have been intended to embrace them. The purpose of the mortgage was to enable the company to raise money to build and equip their road. Would it not, then, be a frustration of the object, if they should sell their cash means?

We do not think the company had any power, under the act, to mortgage their stock subscriptions as security for the payment of those bonds. They had a right to sell them to raise money to be appropriated to the road, its building and equipment. The money received of Dorathy for Clark's subscription was so used and appropriated.

Appellee did not commence his suit by attachment, under which the administrators of Clark were garnisheed, until the 24th of August, 1866, seven years after the purchase by Dorathy. This proceeding could not override Dorathy's right, which he had purchased in 1858, and for which he had in great part paid.

The sale to him was by an authorized agent of the company, and has never been repudiated, except it might be so considered by the subsequent sale to Starnes himself, and he, thus purchasing, after the sale to Dorathy, should be considered as holding the claim in trust for Dorathy.

We are of opinion this claim is not included in the mortgage of February 5, 1857, under any of the terms used in it; and if it was designed to be included, it was not authorized by the act of the legislature of Wisconsin, conferring the power upon railroads to make trust deeds or mortgages.

For the reasons given, the decree of the superior court is reversed.

*Decree reversed.*