NATHANIEL DRESSOR

*v.*

GEORGE C. McCORD, use, etc.

*Filed at Mt. Vernon October 2, 1880.*

| 96 | 389 |
| 150 | 168 |
| 96 | 389 |
| 73a | 567 |

1. EQUITABLE ASSIGNMENT—*garnishment.* An agreement between a debtor and his creditor holding a trust deed, whereby the debtor is to discontinue a suit to prevent a sale of his land under the trust deed, and the creditor, in case he acquires the title at the trustee's sale, is to select out of the whole body of land one hundred and sixty acres and make it available in the payment of a note given by the debtor and a son-in-law of the creditor, so as to pay the son-in-law's share of the note, is, in equity, a complete assignment by the debtor of any interest he may have had in the land so to be selected, and a setting of it apart to discharge the debt designated, and the debtor has no such interest as is liable to be reached by garnishee process.

2. After an equitable assignment or setting apart of a claim for the payment of a particular debt owing by the assignor and another, the holder of the interest so set apart will not be liable to garnishee process at the suit of other creditors of the assignor.

APPEAL from the Circuit Court of Bond county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Ryhiner & Co., creditors of George C. McCord, having obtained a judgment for over $4000 against him in the circuit court of Bond county, at the March term of 1876, and having taken other preliminary steps required for that purpose, on the first day of June, 1876, sued out process of garnishment against Nathaniel Dressor, in which it is recited that Dressor "is indebted to the said defendant, George C. McCord, or has effects or estate of said defendant in his hands." This process was served upon Dressor on the day on which it was issued.

February 20, 1877, Dressor filed his answer in response to interrogatories on file, in which he denies all indebtedness and all liability, and denies that he had effects or estate of defendant in his hands. He admitted that he had executed with McCord a certain agreement in writing, the terms of which he could not remember, but stated that it was in the hands of Denning, clerk of the county court, and that his chief and only design in making the agreement with McCord was to prevent McCord from bringing other suits against him, and otherwise delaying him in getting possession of certain land mentioned in a trust deed which McCord had executed to Dressor to secure a debt due Dressor; and also to bring about a discharge of John McCord (son-in-law of Dressor) from liability on a note made by George C. McCord, John McCord and others.

On the trial (which was had before the court without the intervention of a jury, by agreement of parties,) that writing was introduced in evidence, and was in the following words:

"George C. McCord has dismissed his injunction suit against me and my brother. Now, in case he will not again attempt to obstruct me in the collection of my claim against him, which is secured by deed of trust, and will give me immediate possession of the lands in said deed of trust men-

tioned, I will, as soon as practicable, advertise and sell said lands under said deed of trust, or have it done, and will buy it at the sale, unless some one bids more than all the liens now on said land; and after I get my deed will place 160 acres of the same where it can be made available in the payment of a note given by G. C. McCord and John McCord, my son-in-law, and William Allen. That is, it is to pay John McCord's share of the said note and release him, and as much more as it may or can, and I will make deed for that purpose and to that end, to whomsoever it may be thought best by me to take the deed, but it shall be made for that purpose. I will select the land out of the lands mentioned in said deed of trust, and to be contiguous. If any one should out-bid me at the sale, then I will pay the value of the 160, according to the price it brings at said sale.

"This agreement has nothing to do with the injunction suit this day dismissed by G. C. McCord against me and my brother Francis, but leaves me at liberty to avail myself of my legal and equitable rights. If more than the amount of my note, interest and costs are bid on said lands, the surplus may be used by the trustee in paying taxes on said land now due, and to redeem them from former sale for taxes.

N. DRESSOR,

G. C. McCORD."

In addition to the reading of this instrument, a witness testified that he knew the lands referred to in the agreement as mentioned in the deed of trust from McCord and wife to Dressor. The witness also stated that Dressor did advertise the lands in the deed of trust and sell them after the agreement was made; that this sale was made upon the same day that this garnishee process was served on Dressor; that the service was after the sale; that Dressor took possession of the land mentioned in the deed of trust from McCord to him soon after the sale, the witness thinks immediately after the sale. This was all the evidence in the case.

The court, after a hearing, entered an order in which it said: "The court doth find that the said George C. McCord has an equitable interest in and to 160 acres out of the following lands:" (Here follows an enumeration of the lands mentioned in a deed of trust from McCord and wife to Dressor.) "Said 160 acres to be contiguous, and selected by the said Nathaniel Dressor out of the above described lands. Wherefore it is adjudged by the court that the said N. Dressor surrender the estate in his hands, to-wit: the interest of the said George C. McCord in and to the 160 acres of land as aforesaid, to be sold on execution in favor of the said Frederick Ryhiner & Co., and that the said George. C. McCord, for the use of Ryhiner & Co., have judgment accordingly against the said Nathaniel Dressor, and for the costs of this proceeding."

From that judgment Dressor appealed to this court. The appeal was consummated in March, 1877.

Messrs. HENRY & FOUKE, for the appellant:

Under the agreement, McCord took no sort of property, either legal or equitable, in any of the lands conveyed in the deed of trust, nor could he acquire any title or interest in the lands in the way of having a property in them that could be reached by garnishee process, even by a full compliance on his part with the conditions of the agreement. The only benefit that George C. McCord could derive was that John McCord should be made able to pay his part of a certain note owing by both and one Allen.

Where an uncontradicted answer does not clearly establish liability, the garnishee must be discharged. *Pierce* v. *Colton*, 12 Ill. 358; *Willhelm* v. *Hoffner*, 52 id. 222.

The kind of interest the court found in George C. McCord in and to the land can not be reached by garnishee process. Legal rights and liabilities alone can be made the subject of garnishment. *May* v. *Baker*, 15 Ill. 89; *Webster et al.* v. *Steel et al.* 75 id. 544.

Mr. G. VAN HOOREBEKE, for the appellee:

Whatever interest McCord had in the 160 acres was subject to sale. Rev. Stat. 1874, p. 622, sec. 3, and p. 621, sec. 1.

Naked possession of real estate is subject to sale. *Turney* v. *Saunders*, 4 Scam. 532; *Ferguson* v. *Miles*, 3 Gilm. 358; *Switzer* v. *Skiles*, 3 Gilm. 532; *Donaldson* v. *Holmes*, 23 Ill. 85; *Thomas* v. *Bowman*, 29 id. 426. So is a vested remainder. *Hempstead* v. *Dickson*, 29 Ill. 193. So is the interest of a mortgagor. *Fitch* v. *Pinkard*, 4 Scam. 83; *Funk* v. *McReynolds*, 33 Ill. 481; *Finley* v. *Thayer*, 42 id. 350; *Curtis* v. *Root*, 20 id. 53. So is a life estate. *Newman* v. *Willis*, 52 Ill. 98. So is an equity of redemption. *Curtis* v. *Root*, 20 Ill. 53.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

Plainly, this judgment must be reversed. Appellee shows no legal cause of action or right in this proceeding as against Dressor, and his pretended claim of right is such that the remedy adopted is entirely inappropriate. Dressor, by his contract, agreed, upon certain contingencies, which are not shown by this record to have happened, to place 160 acres of land (to be a part of a larger body of land, to be selected by him) so as to render it available in the payment of a note which was executed by George C. McCord, and by John McCord, who was a son-in-law of Dressor; that is to say, he was to pay John McCord's share of the note. After this contract was made, (it seems to have been made in good faith,) it is not perceived by what right any other creditor of George C. McCord could claim to take this land or the proceeds that might arise from the disposition of the land, and apply it to his debt, when by the contract of Dressor and George C. McCord, it was to be applied to the payment of another debt of George C. McCord, for the purpose of relieving John McCord, the son-in-law of Dressor, from

liability for the same debt. This contract was, in equity, a complete assignment by George C. McCord of that cause of action, setting it apart for the purpose of paying and discharging the debt of George C. McCord, for which John McCord was also liable.

After such an assignment was made, it is not perceived how any other creditor could come in and claim to appropriate these assets to his debt and leave the liability on John McCord undischarged. The creditor can have no higher right against Dressor than had George C. McCord, and it is plain George C. McCord could not, without the consent of Dressor, have this property applied to the payment of any debt other than that for which John McCord was liable.

But were this otherwise, and had the creditors in this case, Ryhiner and others, an equitable right to have this land selected and disposed of, and the proceeds applied in discharge of the debt of George C. McCord to them, the remedy for this is in a court of equity.

The interest in this property is not such assets as could be reached by a process of garnishment.

Judgment must be reversed and the case dismissed.

*Judgment reversed.*