78  629
s182s486
78  629
e105  411

## John Dolese and Jason H. Shepard v. James C. McDougall et al.

## Cleveland Stone Company v. James C. McDougall et al.

1. EQUITY PRACTICE—*Objections to a Master's Report.*—Where a party files no objection before the master and no exceptions to his report, it will be too late to raise the same on appeal in the Appellate Court.

2. SAME—*Questions of Fact Referred to a Master for His Determination.*—Where matters of fact are referred to a master for his determination, it is the duty of the parties, when notified, to appear before him and there contest the matter, and if his findings are not, in their judgment, supported by the evidence, it is their duty to interpose their

objections, so as to afford the master an opportunity to modify his report if it should happen to be wrong; and if, in such case, after hearing the objections, the master declines to modify or change his report, it is the duty of the objecting parties, after it has been filed in court, to appear there and file exceptions to it; and when this course has not been pursued, and no sufficient reason is assigned for not doing so, the report, when approved by the court, will be deemed conclusive upon the question covered by it.

3. EQUITABLE ASSIGNMENTS — *Of Funds Raised by Special Assessments.*—Where money, raised by special assessment and levied for the improvement of a street, is due to the contractors for making the improvement, the giving of orders on such money by such contractors operates as an equitable assignment of such funds for the amount mentioned in the orders to the payees in such orders.

4. SPECIAL ASSESSMENT — *For Local Improvements — Ordinance Making, Must Provide How It Is to Be Made.*—When an ordinance of a city or village provides for the making of a local improvement, the ordinance must prescribe whether the same shall be made by a special assessment, or by special taxation of contiguous property, or general taxation, or both, and the improvement can not be made in any other than the prescribed mode.  S. & C. Stat. Ch. 24, par. 118.

5. SAME—*Contractors Have No Lien upon a City, etc.*—All persons making contracts with a city or village and who agree to be paid from special assessments, have no claim or lien upon the city or village, except upon the special assessment fund collected for the work contracted for.

6. SAME—*Construction of Orders Drawn on the Fund.*—A direction in an order drawn on a special assessment, to "charge the same to our account of West Lincoln Ave.," is, in effect, a direction to issue a warrant, for the amount of the order, on the special assessment fund for the improvement of West Lincoln avenue.

**Appeal,** from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding.  Heard in this court at the October term, 1897.  Affirmed.  Opinion filed November 16, 1898.

CUSTER, GODDARD & GRIFFIN and JOHN S. COOPER, attorneys for appellants.

GEORGE S. BAKER and CRAFTS & STEVENS, attorneys for the village of South Evanston, Olof Vider and M. J. LaBounty, appellees.

LEE, LOWRY & LEE, attorneys for E. W. Blatchford & Co., appellee.

John Lewson, attorney for L. Wolff Co., appellee.

Alexander Clark, attorney for intervening petitioners, Frieding & Johnson, appellees.

Mr. Justice Adams delivered the opinion of the court.

These appeals were taken from the same decree and have been argued by counsel and considered by the court on the same record. November 16, 1891, John Dolese and Jason H. Shepard filed a bill, alleging the recovery by them, as copartners under the firm name of Dolese & Shepard, November 14, 1891, of a judgment against James C. McDougall and Edward E. Hammond for $4,017 and costs; that on the same day execution was issued on the judgment, and November 16, 1891, was returned by the sheriff no part satisfied, etc. The bill further alleges that McDougall & Hammond, as partners under that name, have been engaged in the business of plumbing, sewer building and grading, paving and improving of streets and highways; that various persons have become indebted to them, etc.; that they have done work and furnished material for municipalities, including the village of South Evanston, and that large sums of money are or shortly will be due them, on account of contracts between them and said municipalities, but only when the work contracted for shall be completed; that, by reason of the financial embarrassment of McDougall & Hammond, work on the contracts had been suspended, etc.; and that it was for the interest of all parties that a receiver should be appointed and that the work contracted for should be completed, etc. The bill further alleges that, October 24, 1891, McDougall & Hammond assigned to the complainants all moneys, warrants, etc., due or to become due to them on said contracts from the village of South Evanston, and appointed Jason H. Shepard to collect and receipt for the same, but that the village refused to recognize the assignment and threatened to pay over said moneys, etc., to McDougall & Hammond, or some person or persons on their behalf. It is further alleged, on information and belief, that within ten days prior to the filing the bill,

McDougall, in the night time, spirited away the goods and chattels, etc., of the judgment debtors, and secretly sold and assigned them to Peck Bros. & Co., a corporation; L. Wolff Manufacturing Company, a corporation; E. W. Blatchford & Co., a corporation, and Oliver D. Peck and Albert D. Sanders, who claim to be creditors of McDougall & Hammond, and that said sale and assignment were made in payment of the indebtedness to them of McDougall & Hammond. " But complainants show that at the time of the sale and assignment the said defendants, to whom the same was made, were under a valid and binding contract with the complainants not to seek or accept from the said firm any preference or advantage over the complainants in the premises, and that by reason thereof the said sale, assignment and transfer is void in equity and of no effect as against complainants." The bill, after alleging that Benjamin F. and Nathan A. Hill are indebted to the judgment debtors, contains the usual general allegations as to the ownership of property by the judgment debtors, and prays for an answer under oath and a discovery, an injunction against defendants restraining them from assigning, etc., or in any manner incumbering, disposing of or interfering with any of the property or assets of the judgment debtors, and the appointment of a receiver, etc.

James C. McDougall, Edward C. Hammond, Peck Bros. & Co., E. W. Blatchford & Co., L. Wolf Manufacturing Company, Oliver D. Peck, Albert D. Sanders, Eliphalet W. Blatchford, Benjamin F. Hill, Nathan A. Hill, the village of Highland Park, the village of Evanston and the village of South Evanston, were made defendants to the bill.

On the same day on which the bill was filed a temporary injunction was granted as prayed by the bill, and a writ of injunction was issued and served on the village of South Evanston. Eric J. Nelson was appointed receiver. Answers to the bill were filed by McDougall, the two Hills, the villages of Evanston, South Evanston and Highland Park, Peck Bros. & Co., E. W. Blatchford & Co., L. Wolff Manufacturing Company, Oliver D. Peck, Albert D. Sanders

and Eliphalet W. Blatchford.   Hammond was not served nor did he appear.   On petition of the Cleveland Stone Co. it was made a party defendant and filed its answer to the bill, and also filed a cross-bill, in which it is alleged, substantially, that on and prior to November 5, 1891, McDougall & Hammond were indebted to cross-complainant in about $5,041.16, partly evidenced by their promissory notes and partly on open account; that prior to said date McDougall & Hammond caused cross-complainant and others of their creditors to meet at the office of Dolese & Shepard to arrange some plan by which the creditors would forbear to sue at law, and thus enable McDougall & Hammond to complete their contracts and pay their creditors; that an arrangement was proposed at said meeting which was deemed impracticable, and the meeting was adjourned till November 5, 1391; that, at the last date, creditors representing $38,000 of indebtedness out of a total of something over $40,000, were present, including E. W. Blatchford & Co., Peck Bros. & Co., L. Wolff Manufacturing Company and Olof Vider and M. J. La Bounty, partners under the name of Olof Vider & Co.; that Jason H. Shepard was chairman of the meeting, and that a motion was put and adopted (all present, except Edward Johnson, who wanted time to think over the matter, voting in favor of the motion) that McDougall & Hammond should assign and transfer to Jason H. Shepard and Albert D. Sanders, as trustees for the creditors, all their assets except amounts due or to become due, on contracts for plumbing or sewer work taken since August 20, 1891, and that said trustees should, without charge for their personal services, complete the uncompleted contracts as economically as possible, and should pay the creditors *pro rata;* that it was thereupon agreed by all the creditors present and by McDougall & Hammond, that the attorney of cross-complainant should reduce " the proposition and agreement " to writing, when the same was to be considered by a committee consisting of the attorneys of the complainants, the attorneys of Peck Bros. & Co., and the attorneys of McDougall and of Hammond, said

committee to have the writing circulated among the creditors, and that, in the meantime, no steps should be taken by any of the creditors then present to collect their claim, nor by said firm; that cross-complainant's attorney, within one or two days after the meeting, reduced the agreement to writing, leaving certain blanks to be filled by the committee, and gave the same to the attorney of Peck Bros. & Co., as had been understood and agreed; that while cross-complainant, relying on said agreement, was waiting to have said agreement presented to it for signature, E. W. Blatchford & Co., Peck Bros & Co., the L. Wolff Manufacturing Company, Olof Vider, M. J. La Bounty and Edward Johnson conspired secretly with McDougall, and without Hammond's knowledge or consent, to take possession of certain of the property and assets of McDougall & Hammond and convert the same to their own use; that about November 12, 1891, E. W. Blatchford & Co., Peck Bros. & Co., and L. Wolff Manufacturing Company, assisted by McDougall, carried away the goods and chattels of McDougall & Hammond in the night time, which had been formerly valued by said last mentioned firm at $6,750, and divided the same among themselves, in what proportion cross-complainant knows not; that the book accounts and other choses in action were also assigned to said corporations or to Oliver D. Peck, Albert D. Sanders and Eliphalet W. Blatchford, or some one or more of them, for their use; that E. W. Blatchford & Co. and Peck Bros. & Co. procured from McDougall an assignment of a claim against Edwards & Walsh, and collected on the same $1,450, giving a receipt in full for the claim, although McDougall & Hammond had formerly inventoried said claim to creditors as being $1,557, which was in fact the amount due; that November 16, 1891, Olof Vider & Co., in bad faith, etc., and colluding with McDougall and the board of trustees of the village of South Evanston, fraudulently obtained from said trustees warrants of said village to the amount of about $5,200, for moneys due McDougall & Hammond from said village.

Dolese v. McDougall.

The foregoing are the material allegations of fact in the cross-bill. The defendants to the original bill and also Olof Vider, M. J. La'Bounty and Edward Johnson, are made parties defendant to the cross-bill.

The cross-bill prays among other things : " That adjudication be made by the court that all of the property and assets of said firm of McDougall & Hammond on the 5th day of November, 1891, be declared to have become on that day, and ever since have continued, by reason of said creditors' agreement and arrangement, as to all the creditors who participated in said meeting, and as to said firm of McDougall & Hammond, a trust fund for the payment *pro rata* of all said creditors, except said defendant creditors above mentioned by name."

All defendants to the cross-bill answered except the village of Highland Park, McDougall and Hammond, who were not served. The former two were defaulted on the cross-bill. The answer of Peck Bros. & Co. to the cross-bill admits that it attended the meeting of November 5, 1891, but denies that nineteen-twentieths of the creditors were present; admits that a memorandum was made and that it agreed to execute it if all creditors and the insolvents would do likewise, but that Johnson refused to agree to the memorandum, and McDougall also refused, pending further consideration by himself and his attorneys; denies that it agreed to take no steps to collect its claim against the insolvents; admits that an agreement of some kind, the character of which is unknown to defendant, was proposed and submitted to McDougall's attorney, and that McDougall, about November 10, 1891, notified defendant that he had rejected the same and would not sign any agreement; admits that McDougall, unsolicited thereto by defendant, offered to return to defendant goods sold by defendant to McDougall & Hammond for plumbing work, and for which defendant could have enforced a lien, and that nearly all of the goods so received were goods so sold by defendant, as aforesaid, and that there was due to defendant from McDougall & Hammond about $2,500. The answer admits

the assignment of the Walsh account and the collection of
$1,450 of the same, and avers that it was informed that was
the whole amount due.    Defendant denies all other allega-
tions of the cross-bill.    The answers to the cross-bill of E.
W. Blatchford & Co. and L. Wolff Manufacturing Company
are substantially the same as that of Peck Bros. & Co.,
except that the indebtedness of McDougall & Hammond to
E. W. Blatchford & Co. is stated to be $2,850, and that to L.
Wolff Manufacturing Co. $584.10.    Eliphalet W. Blatchford
adopts the answer of the former company, and Oliver D. Peck
the answer of the latter company.    The answers deny any
assignment to any of the individuals last mentioned, and
also deny that the corporations or either of them took or
has in possession any of the books of McDougall & Ham-
mond.    The answer of Olof Vider and M. J. La Bounty to
the cross-bill denies that there was any agreement at the
meeting of November 5, 1891, as alleged in the cross-bill,
and avers that the warrants delivered to them by the vil-
lage of South Evanston were delivered to them by the
village on the order of McDougall & Hammond, before the
commencement of the suit, and had been sold by them and
converted into money, and that the consideration for the
orders and warrants was cedar blocks furnished by them to
McDougall & Hammond and used by the latter in paving
Lincoln avenue under a contract with the village.    The
answer denies all charge of fraud, collusion and conspiracy.
The answer of the village of South Evanston denies knowl-
edge of any agreement between the creditors and collusion
with the creditors, or any of them, and admits the issuing,
on the order of McDougall & Hammond, warrants to Vider
& Co. and to Edward Johnson, the warrants being on vouch-
ers for work done and material furnished by McDougall &
Hammond through said parties in pursuance of contracts
between McDonald & Hammond and the village.    The
answer avers that by reason of the financial embarrassment
of McDougall & Hammond and their failure to complete
their contracts, it had declared them forfeited and was,
itself, proceeding to complete them when the receiver took

Dolese v. McDougall.

possession, etc. The village of Evanston denies any indebtedness to McDougall & Hammond. Edward Johnson's answer it is unnecessary to refer to for reasons which will hereafter appear. August Frieding and Adolph Johnson filed an intervening petition, alleging, in substance, that on an accounting between them and McDougall & Hammond, there was found due them from said firm, $974 for cutting and setting stone for the firm, under contracts between said firm and the village of South Evanston, for which amount the firm, by McDougall, gave them an order on the village, which, November 14, 1891, was accepted and a warrant drawn for the amount, but that the village, on account of the injunction, refused to deliver to them the warrant. The prayer is that the village be ordered to deliver the warrant to the petitioners, or, in case it has to be turned over to the receiver, that he be so ordered. Replications were filed to the answers to the bill and cross-bill, and the cause was referred to the master, including the account between the village of South Evanston and the claim of Frieding & Johnson, to take proofs and report the same, with his conclusions.

The master reported, in substance, as his conclusions, that at the meeting of November 5, 1891, McDougall and Hammond and their creditors then present made a valid and binding agreement that Shepard and Saunders, as trustees, should take possession of the assets, books and accounts of McDougall & Hammond, complete all uncompleted contracts and collect and distribute the assets *pro rata* among all the creditors, and that pending such action of the trustees all said assets should remain in the possession of the trustees, and that none of the creditors then present should take any step to enforce the collection of their claims; that the action of E. W. Blatchford & Co., L. Wolff Manufacturing Company and Peck Bros. & Co., in taking possession of the property of McDougall & Hammond and of McDougall, in making an assignment to said companies of the book accounts of the said firm, was illegal and contrary to the agreement of November 5, 1891; that the value of the

material taken November 12, 1891, by said three companies was, according to a schedule presented by McDougall & Hammond at the creditors' meeting, $6,000, and that said companies should be ordered to return the same to the receiver or be charged with $6,000, etc.; that complainants, by their agreement of November 5, 1891, with the other creditors, waived all right to the assets of McDougall & Hammond assigned to them October 24, 1891; that the warrants to Olof Vider & Co., E. Johnson, T. B. Blanchard and Frieding & Johnson were invalid and were issued in violation of the injunction, and should be decreed null and void, and that the village should be ordered to pay to the receiver the amount of the warrants.

Objections were made to the master's report by Frieding & Johnson, Olof Vider & Co., Peck Bros. & Co., E. W. Blatchford & Co., L. Wolff Manufacturing Company and the village of South Evanston, which were allowed to stand as exceptions to the report, which exceptions the court sustained, modified the report to that extent and confirmed it in all other respects. The court found that the action of the creditors' meeting of November 5, 1891, " was not such action as constituted a valid assignment of the assets of McDougall & Hammond, as claimed by cross-complainant; that the action of said meeting is uncertain and can not be definitely ascertained from the testimony; that no creditors' agreement was ever executed by the creditors or by McDougall & Hammond, but that any contemplated agreement or assignment, as claimed by cross-complainant, was abandoned prior to November 14, 1891;" and the court dismissed the cross-bill of the Cleveland Stone Company and dismissed the original bill as to Peck Bros. & Co., E. W. Blatchford & Co., and the L. Wolff Manufacturing Company. The court found in favor of the claims of Vider & Co., Frieding & Johnson, Edward Johnson and T. B. Blanchard, and their claims being payable out of moneys raised by a special assessment of the village of South Evanston, decreed that the village of Evanston, as the successor of the village of South Evanston, should pay the claims, if

sufficient had been collected, but if not, then *pro rata*, so far as the amount collected on the special assessment would permit. The court also found and decreed that the issuing of the warrants to the above-named parties was not a violation of the injunction; that the title to the fund on which the warrants were drawn had passed to the said parties, respectively, before the warrants were issued, etc. After reading and carefully considering all the evidence in relation to what occurred at the meeting of November 5, 1891, we fully concur in the finding of the Superior Court that there was not such action of the creditors present at the meeting, and of McDougall & Hammond, as constituted an assignment of the assets of McDougall & Hammond. Edward Johnson did not agree to the proposition made at the meeting, and we are of opinion from the evidence that neither did McDougall, and that it was not the understanding of those present at the meeting that what was there done was final or binding on any one present, but that the understanding of those in favor of what was there proposed was that if an agreement satisfactory to McDougall and the creditors should be prepared, they would consent to and sign it, and that the written agreement was to be submitted first to McDougall's attorney for his and his client's consideration. The finding of the court that the real action of the meeting of November 5, 1891, can not be definitely ascertained from the testimony, is well illustrated by comparing the allegations of the cross-bill as to what was agreed on, with the draft of agreement prepared by cross-complainant's solicitor, who was present at the meeting. It is alleged in the cross-bill, in substance, that the amounts due and to become due on contracts of McDougall & Hammond for plumbing or sewer work, taken since August 20, 1891, should not be included in the assignment, yet the draft of the agreement or assignment prepared by cross-complainant's solicitor purports to assign at least part of the moneys due or to become due by virtue of said contracts. There are also blanks in the draft of assignment, evidently left for the purpose of further consideration. The Cleveland Stone

Company is a simple contract creditor, became a defendant and filed a cross-bill at its own request, and bases its right to equitable relief solely on the alleged fact that the action of the creditors and the judgment debtors at the meeting of November 5, 1891, operated as an assignment of the assets of McDougall & Hammond for the benefit of creditors. The court having found the contrary, and, as we think, correctly, the cross-bill was properly dismissed. Cross-complainant's solicitor contends that there was an agreement between the creditors at the November 5th meeting that no one of them would take any steps to collect his claim pending the preparation of a written agreement. Waiving the question whether such agreement, if made, would be binding, we are of opinion that the evidence fails to support the contention. If, as we hold, the cross-complainant has failed to prove its allegation of an assignment, and that therefore its sole alleged ground for equitable relief is non-existent, it has no standing to contest the assignments and transfers to the corporations and persons heretofore mentioned. We will therefore proceed to consider the objections of complainants' solicitors.

Complainants' solicitors insist upon the validity of the assignment by McDougall & Hammond to complainants of date October 24, 1891. The master found that the complainants had waived the assignment by participating in the meeting of November 5, 1891. And the court confirmed the master's report in that respect. Complainants filed no objections before the master and no exceptions to his report. It is now too late to raise the objection. Hurd v. Goodrich, 59 Ill. 450; Pennell v. Lamar Ins. Co., 73 Ib. 303; Jewell v. R. R. Paper Co., 101 Ib. 57, 68; Medsker v. Bonebrake, 108 U. S. 66, 71; Niccolls v. Peninsular Stove Co., 48 Ill. App. 317; Julin v. R. P. Mfg. Co., 54 Ib. 460.

In Jewell v. R. R. Paper Co., *supra*, the rule is thus stated:

" It is well settled that where matters of fact are referred to a master for his determination, it is the duty of the parties, when notified, as was done here, to appear before him

and there contest the matter, and if his findings are not, in their judgment, supported by the evidence, it is their duty to interpose their objections, so as to afford the master an opportunity to modify his report if it should happen to be wrong; and if in such case after hearing the objections, the master declines to modify or change his report, it is the duty of the objecting parties, after it has been filed in court, to appear there and file exceptions to it; and when this course has not been pursued, and no sufficient reason is assigned for not doing so, as was the case here, the report of the master, when approved by the court, will be deemed in this court conclusive upon the question covered by it."

Aside from this rule, we are inclined to the opinion that the complainants did not intend to rely on the assignment of October 24th. Neither of them ever mentioned it at the November 5th meeting, nor did their attorney, who was present and took an active part in the meeting. Mr. Griffin, complainants' solicitor, testified in reference to the confession of judgment and the filing of the bill, "My action was not taken by reason of the previous action of my clients in securing the assignment of contracts to them to secure their indebtedness. I should not have gone about the assignment business in that way." Complainants' solicitors say in their argument: "These appellants even now are not unwilling that this court should follow the master and enter the decree recommended by his report, upholding and enforcing the creditors' agreement." It appears from the record that the indebtedness of McDougall & Hammond to the complainants is in excess of $15,000, part of which was evidenced by the note on which judgment was entered, the remainder being on open account. The assignment of October 24, 1891, to the complainants, purports to be of all the right, title, interest and claim of McDougall & Hammond in and to all moneys, warrants, vouchers, credits or other benefits that may be now due or which shall hereafter become due to McDougall & Hammond from the village of South Evanston. The moneys so due and to become due from the village amounted to a large sum. Such being

the facts, and the complainants being vigilant in guarding and prompt in asserting their rights, as evidenced by the confession of judgment and their creditors' bill, their willingness to waive all claim under the assignment and share *pro rata* with other creditors seems inexplicable, except on the hypothesis that, for some good reason known to themselves, they abandoned such claim. We are of opinion that if the question were an open one, we would be warranted in so holding. Freydenhall v. Baldwin, 103 Ill. 329.

The validity of the claims of Olof Vider & Co. and Frieding & Johnson is questioned by complainants' solicitors. November 14, 1891, McDougall gave to Olof Vider & Co. and Frieding & Johnson the following orders:

"So. EVANSTON, Nov. 14, 1891.

To THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF So. EVANSTON:

GENTLEMEN: Please pay to Olof Vider & Co. forty-six hundred and nineteen & $\frac{72}{100}$ dollars ($4,619.72) and charge the same to our acc't on West Lincoln Av.

Res.

McDOUGALL & HAMMOND."

"So. EVANSTON, Nov. 14, 1891.

To THE VILLAGE OF SOUTH EVANSTON:

Please issue to the order of Frieding & Johnson warrants on special assessment No. 101, for nine hundred and seventy-four dollars for work done on said special assessment for us and charge the same to us, and this shall be your receipt from us for said amount.

McDOUGALL & HAMMOND."

It is not questioned that Vider & Co. and Frieding & Johnson furnished to McDougall & Hammond labor and material for the improvement of West Lincoln avenue, nor is the correctness of the amounts claimed by them, respectively, questioned, but it is objected that warrants were drawn in pursuance of the orders in violation of the injunction, and that the order payable to Olof Vider & Co. did not operate as an assignment of any part of the special assessment fund levied for the improvement. of West Lincoln avenue.

We do not understand that complainants' solicitor questions the power of McDougall to assign the claims of the firm, in payment of the firm debts, nor do we think his power in that regard can be successfully denied. Hanchett v. Gardner et al., 138 Ill. 571.

The money raised by the special assessment levied by the village of South Evanston for the improvement of West Lincoln avenue, was due to McDougall & Hammond, the contractors for the making of the improvement. This is not controverted, but is impliedly admitted. The giving the orders operated as an equitable assignment to the payees of the amounts mentioned in the orders, respectively, of the special assessment fund. Morris v. Cheney, 51 Ill. 451; Morgan Co. v. Thomas, 76 Ib. 120, 141; Donk v. Alexander, 117 Ib. 330, 338; Savage v. Gregg, 150 Ib. 161, 168; Chicago T. & T. Co. v. Smith, 158 Ib. 417.

Complainants' counsel object that the order in favor of Olof Vider & Co. did not operate as an assignment of any part of the special assessment fund, for the reason that it does not expressly direct the amount of the order to be paid out of that fund, that the words of the order, "and charge the same to our acc't on West Lincoln Av." are not equivalent to a direction to pay from the proceeds of the West Lincoln avenue assessment.

The cases cited by counsel in support of this proposition all relate to orders in which the drawers and drawees were private persons or private corporations, there being no legal limitation on the application of the funds subject to their control, and in this respect they are distinguishable from and inapplicable to the present case. The money due to McDougall & Hammond from the village was for work and labor performed and material furnished for the improvement of West Lincoln avenue, in pursuance of a contract between them and the village, and the contract price for the improvement was to be paid for from the proceeds of a special assessment levied by the village.

When an ordinance of a city or village provides for the making of a local improvement, the ordinance must pre-

scribe " whether the same shall be made by special assessment, or by special taxation of contiguous property, or general taxation, or both " (S. & C. Stat., Ch. 24, par. 118), and the improvement can not be made in any other than the prescribed mode.    Village of Hyde Park v. Thatcher, 13 Ill. App. 613.

It is further provided, that " all persons taking any contracts with the city or village, and who agree to be paid from special assessments, shall have no claim or lien upon the city or village in any event, except from the collection of the special assessments made for the work contracted for.    S. & C. Stat., C. 24, par. 165.

The orders are evidence that McDougall & Hammond so agreed.    The treasurer is required to keep a separate account of each fund and the debits and credits pertaining thereto (Id. par. 94), and no fund can legally be expended for any purpose other than that for which it was appropriated (Id. par. 90, 91, 92); in the case of a special assessment for a local improvement, and if an amount is collected in excess of the cost of the improvement, the excess is to be refunded ratably to the persons by whom the assessment shall have been paid (Id. par. 65).    It is manifest from these provisions that a contractor for an improvement to be made by special assessment can be paid only from the proceeds of the special assessment.

The account of the fund to be kept by the treasurer consists of charges to the fund of money paid into the treasury on account of it and credits of warrants drawn against it. The contractor's account with the village necessarily consists of credits for work done on the improvement and debits for warrants issued corresponding with such credits.    Therefore, the direction in the order in favor of Vider & Co., " charge the same to our acc't of West Lincoln Av.," was, in effect, a direction to issue a warrant or warrants for the amount of the order, on the special assessment fund for the improvement of that avenue.    The order could be complied with only in that way.

It is further contended by complainants' solicitors that

the warrants were issued to Vider & Co. and Frieding & Johnson in violation of the injunction. The orders, as before stated, were delivered to the payees the day of their date, viz., November 14, 1891. The Vider & Co. order was presented to the president of the board of trustees of the village the same day. The Frieding & Johnson order was drafted by W. S. Gates, a member of the board of trustees of the village, chairman of the finance committee of the board and temporarily in charge of the streets, and was then signed, "McDougall & Hammond" by McDougall. By order of the president of the board, warrants were drawn in favor of Vider & Co. and Frieding & Johnson for the amounts specified in the orders and were duly signed. On the evening of November 16, 1891, after the service of the writ of injunction, Mr. Gates reported to the board, then in regular session, the receipt of the orders and what had been done in regard to them, and the board approved the report and directed payment to be made to Vider & Co. and Frieding & Johnson. After such approval, and while the board was still in session, the writ of injunction was read by the village clerk. November 17, 1891, warrants were delivered to Vider & Co. for the amount of the order. The warrant in favor of Frieding & Johnson was tendered by Mr. Gates to Frieding after the board adjourned, but Frieding told Mr. Gates that they wanted the cash, and requested him to keep the warrant and have it discounted for them. Gates subsequently tore off the signature and returned the warrant to the village clerk. The court found, as heretofore stated, that the issuing of the warrants was not a violation of the injunction, for the reason that Olof Vider & Co. and Frieding & Johnson were, by virtue of the orders of November 14, 1891, the equitable owners of amounts of the special assessment equal to the amounts of the orders. We are not prepared to say that this finding of the court is erroneous, but, even conceding that there was a technical violation of the injunction, we can not perceive how the complainants could be prejudiced thereby, inasmuch as Vider & Co. and Frieding & Johnson, being the equitable owners of the fund

to the extent of their orders, the fund, to that extent, could not be applied in satisfaction of complainants' judgment.

Complainants' solicitors do not, in their argument, attack the claim of any other creditor. In respect to Edward Johnson and T. B. Blanchard they say: "Edward Johnson is no longer interested in the litigation, and it is not claimed that any such order was given to him or to T. B. Blanchard."

The decree will be affirmed.