J. B. Inderrieden Company v. Owen V. Allen et al.

J. B. Inderrieden Company, Plaintiff in Error, v. United States National Bank of Newberg, Oregon, et al., Defendants in Error.

Gen. No. 17,752.

1. ATTACHMENT—*priorities between creditors.* Where money is advanced by a bank under a verbal agreement that certain fruit is

to become its property, and such fruit is sold and the bills of lading and drafts in its favor are delivered to the bank and sent to its agents, who collect the proceeds, an equitable lien exists in behalf of the bank superior to that of a subsequent attaching creditor.

2. GARNISHMENT—*rights of equitable owners.* In garnishment courts of law will notice and protect the interests of equitable owners.

3. PLEDGES—*rights of pledgee who makes advances.* Where fruit and the proceeds therefrom are pledged to a bank as security for advances and on sale thereof the bills of lading with drafts attached are delivered to the bank, a special property is vested in the bank entitling it to the proceeds of the sale to the extent required for the payment of such advances.

4. PLEDGES—*what shows intention that pledgee receive proceeds of sale of goods.* It is the intention, where fruit and the proceeds therefrom are pledged as security for advances, that the pledgee shall receive the proceeds of the sale thereof in payment of such advances, when drafts attached to the bills of lading are made out to the pledgee, and on rejection of the fruit, a sale is made on his orders, the proceeds are garnisheed in the hands of his agents, and the pledgor exercises no independent authority over the fruit after the delivery of the bills of lading to the pledgee.

5. PLEDGES—*attaching creditor of pledgor.* Where goods and the proceeds therefrom are pledged and the proceeds are collected by the pledgee's agent, the possession thereof so far as an attaching creditor of the pledgor is concerned is the possession of the pledgee.

6. ATTACHMENT—*nonresidence of debtor.* Where attachment is on the mere ground of nonresidence of the debtor, the attaching creditor can acquire only the debtor's rights existing when attachment was levied and the question of the ownership of the property at that time is raised.

7. PLEDGES—*rights of pledgee to proceeds of sale of goods pledged.* Where fruit and its proceeds are pledged for advances for which notes are given, and a creditor of the pledgor attaches the proceeds in the hands of an agent of the pledgee, the pledgor cannot assert rights thereto as against the pledgee, and such pledgee's right is not affected by taking additional evidence of the indebtedness from the pledgor while title to the proceeds is in controversy.

Error to the Circuit Court of Cook county; the HON. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 14, 1913.

MILLER, STARR, PACKARD & PECKHAM, for plaintiff in error; CHARLES L. COBB, of counsel.

SILBER, ISAACS, SILBER & WOLEY, for defendant in

error, U. S. Nat. Bank; FREDERICK D. SILBER and JAMES D. WOLEY, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

The sole question here involved is whether or not, on the facts disclosed, the funds in the hands of the First National Bank of Chicago, garnishee in an attachment suit brought by plaintiff in error against one W. G. Allen, a nonresident, doing business as the Allen Fruit Company, were properly awarded to defendant in error, a bank of Newberg, Oregon, on its interplea.

The undisputed facts are that said Newberg bank advanced $3,125.45 to said Allen for purchasing, caring for and marketing prunes gathered in the fall of 1907, for which he gave his notes as the advances were made. The loans were made on a verbal agreement that the prunes should become the property of said bank, should be stored in a warehouse and insured for its account, sold by Allen, and when sold, that the drafts with bills of lading attached should be delivered to it for collection and application to the payment of such notes, the excess, if any, to be applied to another unpaid note previously given for $2,420.15. All the money advanced was employed in securing the fruit in the manner aforesaid, and later, when a sale thereof was made to Tooker & Company of Chicago, the Allen Fruit Company, through its authorized agents made drafts for $4,649.15 on Tooker & Company payable to the order of intervener and delivered them to it together with the bills of lading attached, acknowledging receipt by the railway company from the Allen Fruit Company of the prunes consigned to its order with directions to notify Tooker & Company. The drafts, with bills of lading attached, were forwarded to Ladd & Tilton, bankers and correspondents of intervener at Portland, Oregon, and by them to the First National Bank of Chicago, for collection. The fruit was rejected by Tooker & Company, and Allen,

having received an offer of $3,000 therefor from one Frost, communicated the fact to intervener, and it thereupon instructed its correspondents at Portland to accept Frost's offer, deliver the bills of lading and return the drafts—all of which was done, and it still holds the dishonored drafts. After the First National Bank of Chicago surrendered the bills of lading and received the $3,000 it was summoned as garnishee. In the meantime Allen had renewed his notes to the bank and no credit was given him on its books for the $3,000 in question.

It is urged in view of these facts that no title to the prunes or the proceeds therefrom passed to intervener. As we view them, it matters little whether it got title or not, for if the legal title did not pass, the transaction manifestly would have created an equitable lien in favor of intervener which could have been enforced in equity (3 Pom. Eq. Jur. secs. 1235, 1236, 1283), and its right under such lien would be superior to that of a subsequent attaching creditor (Morris v. Cheney, 51 Ill. 451; Carr v. Waugh, 28 Ill. 418; Savage v. Gregg, 150 Ill. 161); and courts of law will notice and protect the interests of equitable owners in a garnishment proceeding (Hodson v. McConnel, 12 Ill. 169; Dressor v. McCord, 96 Ill. 389). But the facts render it unnecessary for intervener to assert its claim under an equitable lien. Under the agreement Allen pledged not only the fruit but the proceeds therefrom as security for the advances made to him, and when he delivered to intervener the bills of lading he thereby made a symbolical delivery of the fruit, vesting in the bank a special property therein, entitling it to the proceeds of the sale to the extent required for the payment of such advances. Taylor v. Turner, 87 Ill. 296; Lewis v. Springville Banking Co., 166 Ill. 311; Walsh, Boyle & Co. v. First Nat. Bank of Hiawatha, 228 Ill. 446. And there can be no question that such was the intention of the parties, for not only were the drafts made payable to the order of intervener,

but when their payment was refused and the fruit rejected, intervener's title to the bills of lading was so far recognized that it was through its directions that they were delivered to Frost, and the sale made for $3,000,—a sum less than it advanced, and the proceeds were collected by and garnished in the hands of its agents and not Allen's. The latter exercised no independent authority over the fruit after his delivery of bills of lading to intervener. On the contrary everything he did indicated an intention to fulfill his agreement to sell the same for the account of the intervener to whom he had pledged the proceeds, which, being in the hands of its agents, were, so far as the attaching creditor was concerned, in possession of intervener, and to which, as against the rest of the world, it had the right to a possessory action.

The attachment having been made on the mere ground of the nonresidence of the debtor and there being no question of fraudulent intent, the attaching creditor could acquire only the rights of the debtor as they existed when the attachment was levied and only the question of ownership of the property at that time is raised. Walsh, Boyle & Co. v. First Nat. Bank of Hiawatha, *supra*. No right to the proceeds as against the intervener could have been asserted by Allen, and in our judgment its right thereto is not at all affected by the fact that subsequently, while the title to these funds was in controversy, it saw fit to take from Allen further evidence of his indebtedness.

Whether, therefore, intervener's rights rested upon an equitable lien or a legal title, they were superior to the attaching creditor's, and the judgment in its favor will be affirmed.

*Affirmed.*